**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BETH THURSBY,** | : | |
| Plaintiff | : | |
| | : | |
| v. | : | 3:CV-02-2355 |
| | : | **(CHIEF JUDGE VANASKIE)** |
| **CITY OF SCRANTON,** | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Beth Thursby initiated this employment discrimination action against Defendant City of Scranton ("City") to pursue alleged violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. Ms. Thursby, a former police officer with the City, claims that the City failed to reasonably accommodate her allergy to tobacco smoke. Specifically, she contends that the major life activities of breathing and working were substantially impaired by her tobacco smoke allergy, and that Scranton should have accommodated her impairment by implementing a non-smoking policy in areas where she performed her duties.

The City has moved for summary judgment arguing: (1) Ms. Thursby is not disabled as defined by the ADA; (2) the City reasonably accommodated Ms. Thursby by making a non-smoking room outside police headquarters available for her use; and (3) a collective bargaining agreement between the City and the police labor union made implementation of a non-smoking policy unreasonable. Because Ms. Thursby has presented sufficient evidence to support a jury

finding in her favor on each of the City's arguments, its motion for summary judgment will be denied.

## I. BACKGROUND

Plaintiff Beth Thursby suffers adverse reactions when exposed to tobacco smoke or odors for more than a few minutes.[1] (Aff. of Beth Thursby ("Thursby Aff.") (Dkt. Entry 33) ¶¶ 2-3, 10-11.) Her sinuses become inflamed, which causes her breathing difficulties. (Id. ¶ 3.) She experiences tightness in her chest and repeatedly coughs to the point of hurting her chest. (Id.) Her throat becomes sore and her voice deepens. (Id.) She has even had throat and chest infections. (Id. ¶ 2.) She gets dizzy and loses feeling in her arms and hands. (Id. ¶ 3.) Even after removing herself from the exposure, Ms. Thursby may continue to suffer adverse reactions for up to five days. (Id. ¶ 10.) This can cause her sleeping difficulties. (Id. ¶ 3.) Because of her condition, Ms. Thursby tries to avoid situations in her private life that may expose her to tobacco smoke or odors. (Id. ¶¶ 12-13.)

Ms. Thursby was employed as a police officer for Defendant City from June 20, 1990 to December 15, 2002.[2] (Def.'s Statement of Material Facts ("SMF") (Dkt. Entry 31) ¶¶ 5-6.) Employment conditions within the police department are governed by a collective bargaining

---

[1] The medical term for Ms. Thursby's reaction is rhinosinusitis. She receives treatment for her condition from doctors. (Thursby Aff. ¶¶ 5-7.)

[2] Ms. Thursby took a disability retirement in December of 2002 for work-related injuries. Her disability retirement was not based upon her tobacco allergy.

agreement between the City and the police labor union, the Fraternal Order of Police ("FOP").[3] (Id. ¶ 3.)  The collective bargaining agreement in effect from January 1996 through December 2002 did not contain a non-smoking policy.  (Id. ¶ 4.)

Ms. Thursby primarily operated out of a police car.  (Id. ¶ 21.)  She also regularly spent time at police headquarters and at the police roll call room.  (Id. ¶ 8, 23.)  During her employment, Ms. Thursby experienced adverse reactions to tobacco products while in police vehicles, at police headquarters, and participating in roll call.  (Thursby Aff. ¶¶ 29-32.)  She sometimes had to go home because of the reactions, and used sick leave on at least two occasions as a result of her tobacco sensitivity.  (Id. ¶¶ 35-36.)

The police headquarters for the City is located in the basement of the city hall building in Scranton, Pennsylvania.  (Tr. of Bethany Thursby's Aug. 11, 2003 Dep. ("Thursby Dep.") (Dkt. Entry 28-3) at 11.)  On August 8, 1997, Chief of Police James Klee issued an order banning smoking in the police headquarters.  (Tr. of James Klee's Oct. 8, 2003 Dep. (Dkt. Entry 37) at 14-16.)  Ms. Thursby states that police officers continued to smoke at headquarters despite the order.  (Thursby Dep. at 34.)  Police Chief Klee rescinded the smoking ban in January 2000 after concluding that a non-smoking policy had to be negotiated with the FOP.  (Tr. of James Klee's Oct. 8, 2003 Dep. (Dkt. Entry 37) at 17.)

Ms. Thursby would regularly be present at police headquarters to turn in reports, meet

---

[3] Ms. Thursby was a member of the FOP.

with people, pick up documents, take prisoners in, file arrest reports, and perform other tasks. (Thursby Dep. at 11-12.)  Though the amount of time that Ms. Thursby would spend at headquarters varied, she spent on average about an hour per eight-hour shift there.  (Id. 12-14.)  Occasionally, she would spend an entire shift at headquarters.  (Id. at 12-13.)

Ms. Thursby made numerous complaints about smoking at police headquarters. (Thursby Aff. ¶ 34.)  In response, Captain Kevin Mitchell gave Ms. Thursby access to other non-smoking rooms located in the city hall building.  (Def.'s SMF ¶ 22.)  Ms. Thursby, however, could not perform some job duties from these rooms, including accessing police files and computer databases, processing arrests, and preparing affidavits or reports.  (Pl.'s SMF (Dkt. Entry 34) ¶ 22.)

Ms. Thursby also asked the FOP and the Scranton City Council to implement a non-smoking policy in areas where she performed duties for the police department.  (Thursby Aff. ¶¶ 52, 55.)  Neither implemented a non-smoking policy during Ms. Thursby's employment.  (Id. ¶¶ 54, 56.)

On December 27, 2002, Ms. Thursby filed a complaint in this Court alleging that the City violated the ADA and the PHRA.[4]  (Dkt. Entry 1.)  The City moved for summary judgment on

---

[4] The Equal Employment Opportunity Commission sent Ms. Thursby notice of her right to sue in a letter dated September 30, 2002.  (Compl. Ex. A (Dkt. Entry 1).)

October 29, 2004. (Dkt. Entry 28.) The Motion has been fully briefed and is now ripe for decision.

## II. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to nonmoving party. Cont'l Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982). The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 256-57. Merely conclusory allegations taken from the pleadings are insufficient to withstand a motion for summary judgment. Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Summary judgment is to be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III.  DISCUSSION

The parties agree that the analysis to be applied to Ms. Thursby's ADA claim also applies to her PHRA claim.  See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002); Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).  Consequently, both claims will be addressed together.

The ADA forbids discrimination "against a qualified individual with a disability because of the disability of such individual in regard to . . . terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A "qualified individual with a disability" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  A disability is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).

The plaintiff asserting an ADA claim bears the initial burden of establishing a prima facie case of unlawful discrimination by demonstrating that: (1) she is a member of the protected class in that she has a "disability;" (2) she is qualified for the position in that she can perform the work with reasonable accommodations; and (3) she has suffered an adverse employment

6

action as a result of discrimination.  Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999).  Once the plaintiff demonstrates a prima facie case of discrimination, the burden shifts to the employer to show some legitimate, non-discriminatory reason for the employment action.  Olson v. Gen'l Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996).  If the employer can make this showing, the burden shifts back to the plaintiff to demonstrate that the asserted reason for the decision was a pretext for discrimination.  Id. at 951-52.

Defendant City argues that Ms. Thursby failed to establish a prima facie case of unlawful discrimination because she has not demonstrated that: (i) she is disabled under the ADA due to her allergy to tobacco smoke; or (ii) she suffered an adverse employment action because the City reasonably accommodated her alleged disability by making non-smoking rooms available for her use.[5]  The City further argues that implementation of a non-smoking policy throughout the police department was not a reasonable accommodation because it would violate its collective bargaining agreement with the police union.

### 1. Whether Ms. Thursby has a "Disability" Under the ADA

Ms. Thursby asserts that she is "disabled" under the ADA because she has a physical impairment that substantially limits major life activities.  Specifically, she claims that her allergy to tobacco products substantially limits her ability to breath or work.

---

[5] The City does not argue that Ms. Thursby was not qualified to perform the essential functions of a police officer.

It is uncontested that breathing and working are major life activities under the ADA. See 29 C.F.R. § 1630.2(i). Defendant, however, contends that there is insufficient evidence to support the conclusion that Ms. Thursby's allergy substantially limits her ability to breath or work.

An impairment "substantially limits" a person if it makes the person:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

> (ii) Significantly restricted as to the condition, manner or duration under which [the person] can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity.

29 C.F.R. § 1630.2(j)(1).

A Court should consider the following factors in determining whether an individual is substantially limited in a major life activity:

> (i) The nature and severity of the impairment;

> (ii) The duration or expected duration of the impairment; and

> (iii) The permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.

Id. § 1630.2(j)(2).

Plaintiff, of course, shoulders the burden of presenting evidence that the extent of the limitations resulting from her condition, in terms of her own experience, are substantial. See

8

Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999).  That is, "she must affirmatively point to evidence in the record that establishes that she is substantially limited in a major life activity in order to survive a motion for summary judgment."  Meyers v. Conshohocken Catholic School, No. Civ. A. 03-4693, 2004 WL 3037945, at *6 (E.D. Pa. Dec. 30, 2004).  The Supreme Court has emphasized that courts should determine the existence of a disability on a case-by-case basis. See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002).  Thus, the issue before this Court is not whether an allergy to smoking is a recognized disability under the ADA, but whether Ms. Thursby has presented sufficient evidence to support a rational finding that she is substantially limited in her ability to breath or work.  See id.

When an individual claims that an impairment substantially limited the individual's ability to work as well as another major life activity, a court should first determine whether the individual was substantially limited in the other major life activity.  Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 783 (3d Cir. 1998).  If the court finds that the individual is substantially limited in the other major life activity, "the inquiry ends there."  Id. at 784.  Ms. Thursby's claim that her allergy to tobacco smoke substantially limited her ability to breath will thus be addressed first.

Though Plaintiff's evidence is far from conclusive and certainly does not compel a conclusion that Ms. Thursby is disabled within the intent of the ADA, the evidence is sufficient to allow a jury to decide that she is substantially limited in her ability to breath due to her allergy

to tobacco smoke. First, the "nature and severity" of Ms. Thursby's impairment indicates that she is significantly restricted in her ability to breath compared to the average person in the general population. Though the average person may suffer some irritation when exposed to tobacco smoke or odors, Ms. Thursby's reaction is far more severe, including breathing difficulties, a sore throat, tightness in her chest, dizziness, numbness in her extremities, and infections. (Thursby Aff. ¶¶ 2-3.) Indeed, her reactions are so severe that she had to leave work and seek medical treatment on occasion. (Id. ¶¶ 5-7, 35.) Moreover, Ms. Thursby alleged that tobacco smoke also caused her difficulty outside of work. (Id. ¶¶ 12-15); see Homeyer v. Stanley Tulchin Assoc., Inc., 91 F.3d 959, 962 n.1 (7th Cir. 1996) (to show smoke sensitivity substantially impaired breathing, plaintiff required to show that her ability to breathe, "separate and apart from her ability to work," was impaired). The nature and severity of Ms. Thursby's impairment, therefore, weighs in favor of finding a substantial limitation. See Kaufman v. GMAC Mortgage Corp., Civ. A. No. 04-CV-5671, 2006 WL 1371185, at *9-11 (E.D. Pa. May 17, 2006) (asthma triggered by exposure to perfumes substantially limited the plaintiff in the major life activity of breathing in view of its nature and severity); Meyers, 2004 WL 3037945, at *7 (reaching the same conclusion based on similar facts); Adams v. Henderson, 45 F. Supp. 2d 968, 976 (M.D. Fla. 1999) (same).

Second, the "duration" of the impairment can be lengthy. Ms. Thursby stated that her adverse reactions could continue from one to five days after exposure to tobacco smoke.

(Thursby Aff. ¶ 10.)  This sometimes limited her sleep.  (Id. ¶ 3.)  This factor, then, also weighs in favor of finding a substantial limitation.  See Meyers, 2004 WL 3037945, *7 (reaching the same conclusion based on a breathing impairment lasting "one to several days."); Adams, 45 F. Supp. 2d at 976 (reaching the same conclusion based on a breathing impairment that could be "lengthy," requiring the plaintiff to "miss days of work").

Third, Ms. Thursby's impairment is "permanent."  (Thursby Aff. ¶¶ 8-9.)  There is no medical evidence that her condition will improve.  To the contrary, Ms. Thursby stated that her condition worsened as she became older.  (Id. ¶ 4.)  Thus, this factor also weighs in favor of finding a substantial limitation.  See Meyers, 2004 WL 3037945, *7; Adams, 45 F. Supp. 2d at 976.

While the evidence is not overwhelming, and it would have been preferable to have been presented with more information (particularly medical records), the evidence is sufficient to support a finding that Ms. Thursby is substantially limited in her ability to breath due to her allergy to tobacco products.[6]  An inquiry into whether Ms. Thursby is also limited in her ability to work is unnecessary as a result.

### 2. Whether Ms. Thursby Suffered an Adverse Employment Action

Ms. Thursby claims that she suffered an adverse employment action under the ADA because the City failed to reasonably accommodate her allergy to tobacco smoke.  The ADA

---

[6] Of course, medical evidence is not necessary to establish disability.  See Kaufman, 2006 WL 1371185, at *9 n.11.

11

defines discrimination to include: "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). The Third Circuit has also suggested that "the failure to reasonably accommodate a disabled and qualified employee constitutes an adverse employment action for purposes of the ADA."[7]  Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 n.4 (3d Cir. 2006).

Our Court of Appeals has cautioned that "[g]enerally, the question of whether a proposed accommodation is reasonable is a question of fact." Buskirk v. Apollo Metals, 307 F.3d 160, 170 (3d Cir. 2002). The City argues that it did reasonably accommodate Ms.

---

[7] As a general rule, a plaintiff must show an adverse employment action as a result of impermissible discrimination. See Taylor v. Phoenixville School District, 184 F.3d 296, 306 (3d Cir. 1999). In Turner, our Court of Appeals seems to have conflated the discrimination and adverse employment action elements, allowing for recovery even where the failure to accommodate does not result in a tangible adverse employment action, such as termination. The uncertainty caused by this seeming conflation of distinct elements is material in a case such as this one, where it is undisputed that Plaintiff left her employment for reasons entirely unrelated to her disability discrimination claim. It is unclear what relief should be available under the circumstances presented in such a case as this one. It is also unclear that Congress intended to afford a remedy based upon an alleged failure to effect a reasonable accommodation that did not culminate in a tangible adverse employment action. In this regard, it is significant that Ms. Thursby was able to discharge her duties as a police officer despite her tobacco allergy. She does not claim that she was passed over for a promotion or lost any compensation as a result of her condition. It may be, therefore, that she is not entitled to pursue this claim. As the parties have not addressed this particular issue, however, there is no need to resolve it at this time.

Thursby's limitation by making other non-smoking rooms located in the city hall building available for her use. In addition, police officers were requested, "as a courtesy," to cease from smoking when a non-smoking police officer made such a request. (Def.'s Br. in Supp. of Mot. Summ. J. (Dkt. Entry 29) at 10.)

In opposition, Ms. Thursby argues that the City's accommodation was not reasonable because she could not perform many of her job duties from the non-smoking rooms. Specifically, she could not access police files or computer databases, process arrests, or prepare affidavits or reports from these rooms. (Pl.'s SMF (Dkt. Entry 34) ¶ 22.) As a result, Ms. Thursby had to be present in the police headquarters to perform her job. She stated that police officers continued to smoke in the department despite her complaints. (Thursby Aff. ¶¶ 69-74.) Nor has the City addressed Ms. Thursby's complaints about exposure to tobacco smoke and odors in the roll call room and in police vehicles.[8] (Id. ¶¶ 29-30, 72.)

Ms. Thursby has presented sufficient evidence for a jury to find that the City failed to reasonably accommodate her disability. Consequently, the City's motion for summary judgment based on this argument will be denied.

### 3. Whether Implementation of a Non-Smoking Policy Was Not a Reasonable Accommodation

The City's final argument is that it could not implement a non-smoking policy throughout

---

[8] In her deposition, Ms. Thursby stated that there were no non-smoking cars. (Thursby Dep. at 100.)

13

the police department because it would violate its collective bargaining agreement with the police union. An accommodation that conflicts with a collective bargaining agreement is generally not reasonable. See U.S. Airways v. Barnett, 535 U.S. 391, 403 (2002); Kralik v. Durbin, 130 F.3d 76, 83 (3d Cir. 1997).

The City does not cite any provisions in the collective bargaining agreement entitling police officers to smoke in the police headquarters, roll call room, or police vehicles. Rather, the City argues that implementation of a non-smoking policy would violate its duty under the Pennsylvania Employee Relations Act ("PERA") to bargain collectively with the police union on matters that impact the conditions of employment.

When confronted with an initiative that does not squarely conflict with a collective bargaining agreement but may impact conditions of employment, a court:

> [M]ust balance the impact of the issue on the interest of the employee and wages, hours, terms and conditions of employment against the probable effect of the issue on the basic policy of the system as a whole. The test is to weigh the employees' interest in the terms and conditions of their employment against the employer's interest in directing the overall scope and direction of the enterprise.

Crawford County v. Pennsylvania Labor Relations Bd., 659 A.2d 1078, 1081-82 (Pa. Commw. Ct. 1995). This balancing must be applied on a case-by-case basis. Id. at 1082.

In Crawford County, the Court was confronted with a similar smoking ban in a county jail. The Court noted that courts have required negotiations to implement smoking bans in some cases, while not requiring negotiations in other cases. Id. The Court ultimately deferred

14

to the Pennsylvania Labor Relations Board's decision that the county should have negotiated the non-smoking policy with the union of the prison employees.  Id.  Nonetheless, Crawford County counsels that implementation of a non-smoking ban may not necessarily require collective bargaining.  This is particularly true when a municipality's decision to implement a smoke-free environment is to promote a healthy environment, as Ms. Thursby urged here.

Moreover, the City has not presented any evidence that it attempted to negotiate a non-smoking policy with the police union.  Thus, there is no evidence that negotiating a non-smoking policy with the police union would impose an undue hardship on the City.  Significantly, the City negotiated non-smoking agreements with other unions in the city hall building.  Indeed, the City of Scranton has since implemented a non-smoking policy at the police headquarters without negotiation with the police union.  (See Dkt. Entry 45-2.)  Thus, viewing the evidence in a light most favorable to Ms. Thursby, it cannot be concluded that implementation of a non-smoking policy was an unreasonable accommodation.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (Dkt. Entry 28) will be denied.  An appropriate Order follows.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

**BETH THURSBY,**              :
          **Plaintiff**   :
                        :
**v.**                         :   **3:CV-02-2355**
                        :   **(CHIEF JUDGE VANASKIE)**
**CITY OF SCRANTON,**          :
          **Defendant**   :

## ORDER

**NOW, THIS 25th DAY OF MAY, 2006,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (Dkt. Entry 28) is **DENIED**.

2. A telephonic status conference will be held on June 15, 2006 at 9:00 a.m. Counsel for Plaintiff is responsible for placing the call to (570) 207-5720 and all parties should be ready to proceed before the undersigned is contacted.

                                          **s/ Thomas I. Vanaskie**
                                          Thomas I. Vanaskie, Chief Judge
                                          Middle District of Pennsylvania